STATE OF NEBRASKA, APPELLEE, V. BILL SMILEY, DOING BUSINESS AS SMILEY'S CONOCO SERVICE, APPELLANT.

153 N. W. 2d 906

Filed November 3, 1967. No. 36571.

Crosby, Pansing, Guenzel & Binning and Theodore L. Kessner, for appellant.

Ralph D. Nelson and Fred J. Swihart, for appellee.

Heard before CARTER, SPENCER, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

The defendant operates a service station located in a "G" local business district under the zoning and use regulations of the City of Lincoln. He was found guilty of an alleged unlawful use of premises in violation of the zoning ordinance because he had approximately six

U-Haul trailers on the service station premises available for rental.

Under the use regulations applicable to defendant's premises, service stations are specifically authorized. Some 20 or more other specifically defined business uses are permitted. The use regulations for the "G" local business district also specifically authorize: "Accessory buildings and uses customarily incident to the above uses, including parking lots."

The stipulation of facts shows that the defendant has been an authorized agent of U-Haul Co., Inc., for approximately 9 years, for the rental of trailers of the type to transport cargo by attaching to passenger automobiles. There are approximately 14 service stations in the City of Lincoln which are engaged in renting such trailers. Of that number, 10 are located in zoning districts where such rental is lawful under the zoning code of the City of Lincoln. There is no showing as to the total number of service stations in the City of Lincoln, nor is there any showing as to the number of businesses other than service stations which engage in the business of renting such trailers. The trailer rental business in Lincoln, Nebraska, must be in association with another business and cannot be self-sustaining. As a part of the rental of these trailers, springs, shock absorbers, hitches, and other items are sold to customers which are installed on automobiles at the service station. At a service station today, many related items of inventory must be available to solicit and keep customers. The trailers are rented to customers who trade at the defendant's service station as well as other people in the community. The trailer rental business is allied to the selling of gasoline, oil, and vehicle accessories and permits the sale of additional items and servicing of additional vehicles. The U-Haul Co., Inc., for whom defendant is a rental agent, inferentially, is of substantial size, and 96 percent of all its dealer agents in the United States are service station operators.

The plaintiff contends that under the Lincoln zoning code, sales and showrooms, "including service facilities and rental equipment," are permitted in several other business, commercial, and industrial zoning districts and, therefore, it must be assumed that the ordinance was intended to prevent equipment rentals in the "G" local business district.

It is the defendant's contention that a service station includes more than the sale of gas and oil for automobiles, and that the rental of cargo trailers for attachment to passenger automobiles is an accessory use customarily incident to a service station.

The issue involved is one of first impression in this court and the parties have located only one case from other jurisdictions directly considering the issue. The plaintiff relies heavily upon that case, Bennett v. Zoning Board of Adjustment, 396 Pa. 57, 151 A. 2d 439. The Pennsylvania court, in the vivid and colorful phraseology of Justice Musmanno, held that under the facts there sale and rental of trailers was not "customarily incidental" to the business of selling gasoline. However, that case involved a situation where the service station itself was already a nonconforming use; where the number of trailers parked on the premises was from 89 to 91; and where the appellant's income from the trailer business was almost $19,000 per year as contrasted to about $22 per month in other gasoline service stations renting trailers. It was specifically stated in that case: "It is apparent from this impressive figure that the trailer business is not merely an incidental part of Bennett's gasoline business but has become an independent enterprise in itself, all in violation of zoning law."

It seems clear that the primary question before us is whether or not, under the facts as stipulated, defendant's use of the premises in keeping six U-Haul cargo trailers for rental, was an "accessory use * * * customarily incident" to the operation of a permitted service station business. Where the provisions of a zoning ordi-

nance, as to the uses of property which are permitted or which are prohibited in certain districts, are expressed in common words of everyday use, without enlargement, restriction, or definition, they are to be interpreted and enforced according to their generally accepted meaning. City of Omaha v. Gsantner, 162 Neb. 839, 77 N. W. 2d 663.

In the present setting and context, what does "customarily" mean, and to what geographical area should the test be applied? It should not be a mathematical determination to be resolved only by computing percentages; neither should it be resolved by what might be termed the habitual or usual mode of operation. The language in Jantausch v. Borough of Verona, 41 N. J. Super. 89, 124 A. 2d 14, quoted in 1 Rathkopf (3d Ed.), The Law of Zoning and Planning, 23-10, is particularly appropriate in discussing the definition of the word "customarily" or "customary" in a zoning use context. "No doubt the degree of use is a factor. * * * The practice should be sufficient to justify the observation that (it) is not unique or rare. It should be appreciable or perhaps substantial. It should be sufficient to constitute a recognized mode of activity in the field, but it need not be the more prevalent one."

There is also a basic question of interpretation as to whether the term "customarily" applies to the time the ordinance was passed or as of the time the litigation arose. It would seem the better policy, particularly in view of the changing character of business operations generally, to apply the test currently as of the time of the litigation. This is particularly true where the activity is in a business zone, as opposed to a residential one; is not prohibited in specific terms; and accessory uses customarily incidental to specifically authorized primary uses are specifically permitted.

Under the stipulated facts here, approximately 14 service stations in the City of Lincoln as of April 1966, were engaged in the business of renting cargo trailers

of the type to be attached to passenger automobiles. All but two were agents of U-Haul Co., Inc. Approximately 96 percent of all U-Haul Co., Inc., dealer agents in the United States are service station operators, and franchises are limited to one station for each 10,000 population. The cargo trailer rental business must be in association with another business and cannot be self-sustaining in Lincoln, Nebraska. Under the facts here, the rental of cargo trailers for attachment to passenger automobiles by service stations is neither unique nor rare, nor can it be called completely unusual or uncommon.

The burden of proof is on the City as complainant to prove that the use of the premises here involved is prohibited by the applicable ordinance. The Lincoln code defines an accessory use as one which is incidental to the main use of the premises. The incidental or accessory use under a zoning law has been defined as a use which is dependent on or pertains to the principal or main use. 1 Rathkopf (3d Ed.), The Law of Zoning and Planning, 23-6. That author also states that incidental use means that it cannot be the primary use of the property and that whenever the accessory use attains such magnitude as to be no longer incidental, it loses its status as an accessory use.

There is no evidence here that the trailer rental business conducted by the defendant involving six trailers is any more or less extensive than the trailer rental business conducted by the other 13 service stations engaged in such rentals in the city. There is no evidence that the defendant's rental income is anything but minor in comparison to the defendant's primary service station income. Neither is there any reasonable inference to be drawn except that the rental business is factually accessory, subordinate, and incidental.

Zoning laws should be given a fair and reasonable construction in the light of the manifest intention of the legislative body, the objects sought to be attained, the natural import of the words used in common and ac-

cepted usage, the setting in which they are employed, and the general structure of the law as a whole. 58 Am. Jur., Zoning, § 11, p. 945. This court must assume that the city council intended exactly what it said.

Under the particular facts, the rental of cargo trailers for attachment to passenger automobiles by the operator of a service station was an accessory use customarily incident to the permitted service station business.

The judgment of the lower court is, therefore, reversed and the cause dismissed.

REVERSED AND DISMISSED.